[Crim. No. 1184. Third Appellate District.—February 19, 1932.]

THE PEOPLE, Respondent, v. B. T. COWGILL, Appellant.

R. R. Sischo for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PRESTON, P. J.—The defendant B. T. Cowgill was charged by an information filed by the district attorney of Merced County with the crime of grand theft. He entered a plea of not guilty and went to trial before a jury. The jury found him guilty of petit theft. A motion was made for a new trial and denied by the trial court. Defendant was thereupon sentenced to imprisonment in the county jail of Merced County for a period of ninety days and required to pay a fine of $100. From this judgment, and the order denying a new trial, the defendant prosecutes this appeal.

The charging part of the information reads: "That said B. T. Cowgill, on or about the 28th day of August, 1931, at and in the said county of Merced, state of California, and prior to the filing of this information, unlawfully took the property of John Lundquist, consisting of grapes of the value of $250."

Defendant freely admits the taking of the grapes, but insists that they were his property and not the property of the complaining witness John Lundquist.

Defendant formerly owned 20 acres of land in what is known as the "Hilmer Colony", in Merced County. This property was subject to a deed of trust of $2,000; in October, 1930, defendant sold said property to his son Bernard H. Cowgill, subject to the following indebtedness existing against the land. In this transaction it was agreed that defendant should remain in possession of the property and have all the crops produced thereon, provided defendant paid the taxes and interest on the deed of trust.

The record does not show how long the arrangement was to continue. Thereafter, defendant defaulted in the payment of the interest on the deed of trust and the holder thereof gave the usual notice of sale under foreclosure and set the day of sale for July 3, 1931. Just prior to this date (July 3, 1931), defendant, with the consent and approval of his son, entered into an agreement with the complaining witness John Lundquist, whereby defendant agreed to sell

to Lundquist one-half of the land in question, with the crops growing thereon, for the sum of $1500.

It was further agreed that the papers should be placed in escrow with a title company. It was also agreed that upon the purchase price of $1500 being fully paid, that the deed to the land should be delivered to John Lundquist and the title to the growing crops on the land should also pass to him. The agreement also provided that if the money was not paid, the deed was to be returned to the defendant or his son and that title to the growing crops of grapes was not to pass. No definite time was specified in the agreement, but it was estimated that the transaction would be closed in approximately two weeks. It was further agreed between the parties that out of the purchase price Bernard H. Cowgill was to pay on account of the deed of trust the sum of $1300, and then the taxes and interest were to be paid and the balance, if any, was to go to him. In pursuance of this understanding, Bernard H. Cowgill and his wife executed to the Veterans' Welfare Board a grant deed to the property in question and delivered the same through his attorney to the Title Company of Merced, with instructions to deliver the same to John Lundquist or the Veterans' Welfare Board upon the payment of $1500, and if the money was not paid to return the deed to him. At that time, the crop of grapes in question was still on the vines unharvested.

A delay of several weeks followed, due to the absence of one of the officers of the Veterans' Welfare Board, and for other reasons. During said delay and during the latter part of July and the first of August, 1931, defendant complained to his son's attorney and to Mr. Lundquist that the crops were ready for harvesting, and by reason of the fact that the transaction had not gone through within the time allowed, that he was going to take the crop back, and that if Mr. Lundquist wanted to take the land without the grapes, his son would still convey the land; otherwise, he would end the transaction.

Lundquist then told defendant that one of the officers of the Veterans' Welfare Board was absent and that he believed it would go through within a short time. Soon after this last conversation the Veterans' Welfare Board notified the parties that they desired a deed direct from

Bernard H. Cowgill and his wife to John Lundquist rather than from Bernard H. Cowgill and wife to the Veterans' Welfare Board, and asked John Lundquist to return the deed to Cowgill and get another one in its place. Thereupon, and on or about the thirteenth day of August, 1931, the deed executed by Bernard H. Cowgill and wife was returned to them.

Thereafter, about the middle of August, 1931, John Lundquist left Merced County and went to Eureka, Humboldt County, and was gone approximately ten days. Just before he left on said trip, the defendant went to him and informed him that he, the defendant, considered the transaction ended and that he was going to take the crop from the land as it was ready to harvest. Thereafter, and during the latter part of August, 1931, defendant harvested and removed the crop growing on said land and sold it and retained the proceeds therefrom.

On September 2, 1931, and after the grape crop had been removed from the land, John Lundquist requested of the defendant that he have his son and wife execute a new deed in place of one made to the Veterans' Welfare Board. Defendant informed him that he thought his son would still go through with the transaction, but that he would have to take the land without the crop if he wanted it.

Lundquist denied that he agreed to take the land without the crop. However, on or about the twenty-first day of September, 1931, Bernard H. Cowgill and his wife executed and delivered in escrow to the Title Company a new deed, subject to the same conditions for the payment of the purchase price, etc.

Shortly thereafter defendant was arrested upon a complaint sworn to by John Lundquist, charging him with theft of said grape crop. A trial was had with the result above stated.

■ As far as the record shows, no money whatever was placed in escrow by Lundquist, or anyone else, and the transaction has not to this day been completed.

It is claimed by the People that possession of the crop of grapes and land was delivered to John Lundquist. The only evidence we are able to find in the record on the question of delivery of possession is as follows:

Question asked Lundquist: "Did you go upon the land? A. Yes, I went in and hoed the weeds and done some plowing and fixed up the fence and Mr. Cowgill was working right with me so he knew I was there and everything was agreeable to that." This conversation was denied by appellant.

The most that can be said of the possession by Lundquist of the property in question is that he and the appellant were both on the property awaiting the completion of the escrow transaction.

We think the sale of the land and the sale of the grape crop constituted one contract and were not separable. The total consideration of both was $1500.

There was no separate amount for the crops, but one price for both, and the money not having been paid, as per agreement of the parties, no title passed either to the land or the crops.

The People lay considerable stress upon the fact that appellant made certain admissions showing a consciousness on his part of the ownership of the grapes by Lundquist.

We are unable to say that these admissions go to the extent claimed. Neither were they sufficient, under the circumstances, to transfer the title of the property to Lundquist.

We have examined the entire record with care and find it singularly free from error, but the facts adduced before the jury are, in our opinion, wholly insufficient to show that appellant committed a criminal offense in harvesting and selling the grapes in question.

The judgment and the order are therefore reversed.

Thompson (R. L.), J., and Plummer, J., concurred.